UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAHAIRA ABIGAIL TENORIO RUGAMA, | No. 1:25-cv-1918 AC |
| Petitioner, | |
| v. | ORDER |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Currently before the court is petitioner's motion for a temporary restraining order (ECF No. 3), which respondent opposes (ECF No. 12). In their opposition, respondents also request a stay of the proceedings pending the outcome of the appeal in Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).  Id. Petitioner has filed an untimely reply.  ECF No. 13.

I.   Factual and Procedural Background

Petitioner, a native and citizen of Nicaragua, entered the United States without inspection[1]

---

[1] Although the motion for a temporary restraining order states that petitioner entered the country with inspection (ECF No. 3 at 3), this appears to be a typographical error as she asserts in her petition that requesting a bond hearing would be futile after the decisions in Matter of Yajure Hurtado, 291 I. & N. Dec. 216 (BIA 2025), and Matter of Q. Li, 29 I. & N. Dec. 66 (BIA 2025)), (continued)

1

on November 27, 2022, seeking asylum. ECF No. at 3 at 3. At that time, she was briefly detained and then released on her own recognizance with a notice to appear after it was determined that she was not a flight risk or danger to the community. Id. Since then, petitioner has complied with all requests and attended every Immigration and Customs Enforcement (ICE) and United States Citizenship and Immigration Services (USCIS) appointment and check in. Id. Petitioner has resided in the United States for three years and at the time of her detention resided with a friend in Bakersfield where she also has family. Id. She has no criminal history. Id. at 5.

In September 2025, petitioner was informed that she did not submit an ISAP photo on time through the phone app. Id. She received a video call, was told not to let it happen again, and was not detained at that time. Id. On November 3, 2025, petitioner received a video call during which she was told to check in with ICE the following day. Id. Petitioner went to the appointment and was told she was being detained and that she had violated her ISAP supervision. Id. She has not had a hearing where it was determined that she is a flight risk or a danger to the community. Id. at 3-4.

On December 18, 2025, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging her detention. ECF No. 2. The petition asserts three claims for relief. First, petitioner asserts that her detention without a legitimate governmental purpose violates substantive due process. Id. at 11. Second, petitioner argues that her re-detention without a pre-deprivation hearing violates procedural due process. Id. at 11-12. Finally, petitioner asserts that her re-arrest without a material change in circumstances violates the Fourth Amendment. Id. at 13. At the same time she filed her petition, petitioner filed a motion seeking a temporary restraining order in which she requests immediate release her from custody.[2] Id. at 15.

---

which held that immigration judges do not have authority to hold a bond hearing where the noncitizen entered the country without inspection like petitioner did. ECF No. 2 at 4-5.

[2] Petitioner also requested that respondents be enjoined from transferring her outside the Eastern District of California pending resolution of this case. ECF No. 3 at 15. The court will not address this request because petitioner is being granted immediate release and it need not make an order preserving its jurisdiction because habeas petitions are properly heard in the district where the petitioner was detained when the petition was filed. See Johnson v. Gill, 883 F.3d 756, 761 (9th Cir. 2018) (for § 2241 petition, "jurisdiction established at the time of filing").

2

1  Respondents have opposed the motion for a temporary restraining order and stated that their

2  opposition also contains the entirety of their opposition to a preliminary injunction on the same

3  grounds.  ECF No. 12.

4      II.        Motion for a Temporary Restraining Order

5          A.        Legal Standard for a Temporary Restraining Order

6          The standard for issuing a temporary restraining order is essentially the same as that for

7  issuing a preliminary injunction.  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832,

8  839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary

9  injunctions is "substantially identical").  To obtain either form of injunctive relief, the moving

10 party must show: "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer

11 irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his

12 favor, and [(4)] that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council,

13 Inc., 555 U.S. 7, 20 (2008) (citations omitted).  "Likelihood of success on the merits 'is the most

14 important' Winter factor."  Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir.

15 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).  However, a party

16 seeking injunctive relief must make a showing on all four prongs of the Winter factors to obtain

17 injunctive relief.  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

18         B.        Discussion[3]

19             i.        Likelihood of Success on the Merits

20                 a.        Substantive Due Process

21 Petitioner argues that her substantive due process rights have been violated because her

---

[3] In ordering a response to the motion for temporary restraining order, respondents were directed to "SHOW CAUSE as to whether there are any factual or legal issues in this case that render it distinct from the Court's prior orders in [Lopez v. Lyons, No. 2:25-cv-03174-DJC-CKD; Singh v. Andrews, No. 1:25-cv-01543-DJC-SCR; Mariagua v. Chestnut, No. 1:25-cv-01744-DJC-CSK; Ortega v. Noem, No. 1:25-cv-01663-DJC-CKD; Souza v. Robbins, No. 1:25-cv-01597-DJC-JDP] and would justify denial of Preliminary Injunction."  ECF No. 6.  The opposition does not identify any provision of law or fact in this case that would substantively distinguish it from these cases. ECF No. 12.  Instead, it "acknowledges that this matter is not substantively distinguishable from the facts of those cases."  Id. at 2.  Respondents' admission alone is sufficient to support relief on the same grounds and based on the same reasoning as articulated in those cases.

1  detention is without any reasonable justification. ECF No. 3 at 7-8. Respondent does not address
2  petitioner's substantive due process claim. ECF No. 12.

3        The Due Process Clause protects persons in the United States from being "deprived of
4  life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process
5  Clause applies to all 'persons' within the United States, including aliens, whether their presence
6  here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001)
7  (citations omitted). "Freedom from imprisonment—from government custody, detention, or other
8  forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."
9  Zadvydas, 533 U.S. at 690. For this reason, detention in nonpunitive circumstances violates due
10 process except "in certain special and 'narrow'" instances "where a special justification . . .
11 outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Id.
12 (citations omitted). "In the context of civil immigration detention, the two 'regulatory goals' of
13 the Immigration and Nationality Act provisions governing such detention—'ensuring the
14 appearance of aliens at future immigration proceedings' and 'preventing danger to the
15 community'—can provide such "special justification.'" Valencia Zapata v. Kaiser, __ F. Supp.
16 3d __, No. 25-cv-7492 RFL, 2025 WL 2741654, at *11 (N.D. Cal. Sep. 26, 2025) (quoting
17 Zadvydas, 533 U.S. at 690).

18      In this case, petitioner was released on her own recognizance after a finding that she was
19 neither a flight risk nor a danger to the community. In other words, the special justifications that
20 permit civil immigration detention were not present. Additionally, petitioner has no criminal
21 record and has attended every scheduled check-in and appointment. ECF No. 3 at 3, 9. Although
22 petitioner states that she was told she did not timely submit an ISAP photo on a single occasion,
23 she was not detained at that time and was instead told to not let it happen again. Id. at 3.
24 Respondents have not argued that petitioner's re-detention resulted from changed circumstances
25 that show she is a flight risk or a danger to the community. ECF No. 12. Instead, they merely
26 argue that her detention is mandatory under § 1225(b)(2). Id. Petitioner has therefore
27 demonstrated at least a serious question as to whether her re-detention would violate her
28 substantive due process rights by failing to serve a non-punitive purpose.

4

b. <u>Procedural Due Process</u>

Petitioner argues that she has a substantial liberty interest based on her parole into the United States and the fact that she has been living in the United States for three years, and that a change in circumstances is required before re-arrest. ECF No. 3 at 8-10. Respondents do not explicitly address whether petitioner has a liberty interest, but imply that she has no liberty interest and is not entitled to any process because she is a noncitizen subject to removal and must be detained under § 1225(b)(2). ECF No. 12. The undersigned rejects this argument for the reasons set forth below.

Although not specifically presented by petitioner as a freestanding claim for relief, subsumed within her due process claim is the claim that her detention violates the INA because she is subject to § 1226, not § 1225(b)(2). <u>See</u> ECF No. 2 at 6-7. Because a determination as to which section applies to petitioner is encompassed within the due process analysis, the court will address this issue first. With respect to the authority for petitioner's detention, the parties dispute whether petitioner is subject to § 1226, as petitioner contends, or § 1225(b)(2), as the respondents contend. The central question in resolving this dispute, as in an overwhelming number of other cases currently proceeding in this court, is whether petitioner is an applicant "seeking admission."

Section 1225(b)(2)(A) mandates detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." An "applicant for admission" is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 288 (2018)). It also provides that "a detainee may request a bond hearing before an IJ at any time before a removal

order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924 EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025).

Respondents argue that petitioner is properly detained under § 1225(b)(2) but do not offer a basis for her detention under § 1225(b)(2) other than DHS's new statutory interpretation that this provision applies broadly to all noncitizens, including petitioner, who are present in the United States and have not been admitted. ECF No. 12. In this case, petitioner was paroled into the country and has been living here for three years. For the reasons set forth below, it therefore appears that § 1226 applies to her, entitling her to a hearing before re-detention.

The legal arguments relied upon by the government have been rejected by the vast majority of district courts across the country to have considered them.

> By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.

Barco Mercado v. Francis, No. 25-cv-6582 LAK, __ F. Supp. 3d __, 2025 WL 3295903, at *4 & App'x A (S.D.N.Y. Nov. 26, 2025) (collecting cases); Contreras-Cervantes v. Raycraft, No. 2:25-cv-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States. The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).") (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens

6

'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases); see also Lepe v. Andrews, No. 1:25-cv-1163 KES SKO, __ F. Supp. 3d __, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) ("The government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.") (collecting cases).

The undersigned agrees with the well-reasoned and persuasive decisions of the courts cited and referenced above, and rejects the government's novel interpretation of § 1225 as the applicable immigration detention authority for all inadmissible noncitizens. The undersigned finds that § 1226, rather than § 1225(b)(2)(A), applies to a non-citizen who, like petitioner, is already living in the United States. Respondent's argument that petitioner is not entitled to any procedural protections because she is detained under § 1225(b)(2)(A) therefore fails.

Having determined that § 1226 applies, the court now looks to whether petitioner's right to procedural due process was likely violated. As addressed above, freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." Calderon v. Kaiser, No. 25-cv-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest." Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Moreover, several courts have explicitly discussed the discretionary nature of revocation of parole under § 1226, and held that despite such discretion, changed circumstances are necessary in order to revoke parole under § 1226. See Salcedo Aceros, 2025 WL 2637503, at *1 ("DHS may not re-arrest" a noncitizen paroled under § 1226(a), even if revoking parole under § 1226(b), "absent a

change in circumstances." (citing Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021))); see also Kerry-Juma v. Noem, No. SAG-25-04000, 2025 WL 3537525, at *2 (D. Md. Dec. 10, 2025) (citing Luna Sanchez v. Bondi, Civ. No. 25-cv-018888 MSN IDD, 2025 WL 3191922 (E.D. Va. Nov. 14, 2025)); J.C.E.P. v. Wofford, No. 1:25-cv-1559 EFB, 2025 WL 3268273, at *5 (E.D. Cal. Nov. 24, 2025); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (where the decision to release a noncitizen under § 1226(a) is made by a DHS officer, not an immigration judge, the government's practice has been to require a showing of changed circumstances before re-arrest), aff'd sub nom., Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

Petitioner asserts that she was paroled into the United States after it was determined that she was neither a danger to the community nor a flight risk and has been living here for three years. ECF No. 3 at 3, 9. During that time, with the exception of a single, untimely ISAP submission in September 2025 which resulted in a warning, she has never missed a check-in or appointment while waiting for her immigration court hearing. Id. The undersigned therefore finds that petitioner has established a liberty interest in her continued release. Having determined that a liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

8

With respect to the first factor, petitioner has a strong private interest in remaining free from detention. As discussed above, she was paroled into the country after it was determined she was not a safety or flight risk, she has not missed any of her appointments or check-ins, there is no indication that petitioner has not cooperated with immigration authorities during her release, and petitioner had been released in the community for three years before she was re-detained. This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been provided no process, the risk of erroneous deprivation is high, particularly in light of the fact that respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk. See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. Therefore, the court finds that petitioner has established a likelihood of success on the merits of her due process claim.

        ii.    <u>Irreparable Harm</u>

"[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." Hernandez v. Sessions, 872 F.3d 976, 999 (9th Cir.

9

2017). Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1979)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting 11A Wright & Miller's Federal Practice & Procedure § 2948.1 (2d ed. 2004); Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm." (citation omitted)). This factor therefore weighs in petitioner's favor.

### iii.   Balance of the Equities and Public Interest

Finally, "[w]hen the government is a party, the last two factors (equities and public interest) merge." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 668 (9th Cir. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). As addressed above, petitioner is likely to success in proving that respondents have violated federal laws and deprived her of her constitutional rights. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013); Zepeda v. U.S. Immigr. & Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

### iv.   Bond

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original) (some internal quotation marks omitted) (quoting Jorgensen v. Cassiday, 320 F.3d 909, 919 (9th Cir. 2003)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen, 320

10

F.3d at 919 (citing Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)).

Neither party has addressed the issue of security in this case and the court finds no security required here as courts regularly waive security in cases like this one. See, e.g., Zakzouk v. Becerra, No. 25-cv-6254 KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025) (collecting cases).

          v.    Conclusion

As set forth above, petitioner has demonstrated that the Winter factors weigh in her favor. Because the standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction, Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n.7, and respondent has stated that they would have nothing further to add in opposition to a preliminary injunction, ECF No. 12 at 2 n.2, the motion for a temporary restraining order will be converted to a motion for a preliminary injunction and will be granted.

III.    Request for a Stay of Proceedings

In opposition to the motion for temporary restraining order, respondents request that these proceedings be held in abeyance pending the outcome of the appeal in Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). ECF No. 12 at 2. They assert that the appeal will likely be dispositive of issues in this case. Id. Petitioner has filed an untimely reply in which she opposes the request, arguing that she will suffer irreparable harm in the absence of preliminary relief. ECF No. 13 at 2.

As addressed above, the court finds that, as the law currently stands, petitioner has demonstrated a likelihood of success on the merits and the irreparable harm she will suffer in the absence of relief is substantial. In these circumstances, the court will not delay preliminary injunctive relief because a pending appeal *may* change petitioner's likelihood of success. However, because the pending appeal in Rodriguez Vazquez has the potential to be dispositive of issues in this case, the court will consider staying consideration of the merits of the petition. Although petitioner stated that she opposed the stay due to the irreparable harm she would suffer absent preliminary relief, such relief is being granted by this order. In light of this order granting petitioner's immediate release, she will be required to address whether she opposes a stay of the

11

consideration of her petition pending the outcome of the appeal in Rodriguez Vazquez.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order (ECF No. 3) is CONVERTED to a motion for preliminary injunction and is GRANTED.

2. Respondents must IMMEDIATELY RELEASE petitioner Jahaira Abigail Tenorio Rugama from custody under the same conditions of release to which she was subject prior to her November 4, 2025, detention. Respondents shall not impose any additional restrictions on her, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Within four days of the date of this order, respondents shall file a status report confirming petitioner's release.

4. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. At any such hearing, petitioner shall be allowed to have her counsel present.

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

6. Within fourteen days, petitioner shall notify the court whether she opposes a stay of the petition pending the outcome of the appeal in Rodriguez Vazquez and, if so, on what grounds.

DATED: December 22, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE